## BLATTENBERGER v. THE LITTLE SCHUYLKILL NAVIGATION, &c. COMPANY ET AL

July 6, 1839.

*Rule to show cause why a new trial should not be granted.*

The Little Schuylkill Navigation, &c. Company, entered into an agreement with A. B. and C., to deliver to them coal-boats to be run by the latter, with their own captains, hands and horses on the canal, and the latter to transport the coal of the company to Philadelphia, the company to pay them eighty-five cents per ton for the coal transported. While the agreement was subsisting, plaintiff's canal-boat was run into by one of the boats so engaged in transporting coal. *Held :* that the company were not responsible to the plaintiff in an action on the case, for the negligence of those having the management of the coal-boat.

THIS was an action on the case for negligence, brought by John Blattenberger, against the Little Schuylkill Navigation, Rail Road and Coal Company, William Alexander, Frederick Koons, and Alexander Scott, to recover damages for the running of a canal-boat called the Mahanoy, owned by the Little Schuylkill Navigation, &c. Company, near Fairmount, against another canal-boat, owned by the plaintiff, by which the latter boat and cargo sustained injury. The company, by their agent, Thomas Biddle, had made an agreement with William Alexander, Frederick Koons and Alexander Scott, in regard to this and other coal-boats, and the agreement was subsisting and the parties acting under it, at the time the collision of the boats occurred. The Mahanoy was under the charge of a captain in the employ of Alexander, Koons and Scott; neither of the defendants were present at the occurrence.

On the trial of the cause, the question was whether the company was responsible; if not, then whether in this action the verdict must not be for all the defendants. The judge instructed the jury to find for the plaintiff, reserving the point. The jury found accordingly, and defendants moved for a new trial.

The agreement referred to was as follows:

" This agreement, made this twenty-first day of February, A.

[Blattenberger v. The Little Schuylkill Navigation, &c. Company et al.]

D. eighteen hundred and thirty-two, between Thomas Biddle, of the city of Philadelphia, of the one part, and William Alexander and Frederick Koons, also of said city, and Alexander Scott, of said city, of the other part, witnesseth, that the said Thomas Biddle, owner of several canal-boats now building, hereby agrees to deliver in good order and well conditioned to the said parties of the second part, on or about the first of April next, five boats, and from time to time, as soon as completed, ten boats in all, each furnished with two oars, two poles, boat-hook, and bow and stern lines: which boats and appurtenances shall be examined on the delivery to the said parties of the second part; whereupon they the said parties of the second part hereby agree to take charge of said boats, and forthwith provide them with good tow lines, cabin furniture, and every thing necessary to work the said boats to the best advantage; and to well and faithfully protect them from every sort of injury, and in the event of any damage being done to the said boats either by accident, mismanagement or malconduct on the part of the said parties of the second part or any of their agents, to repair the same perfectly at their own proper expense and cost, which shall be done at the yard of such boat-builder as Thomas Biddle may direct. It being hereby intended and understood that the said parties of the second part are the insurers of the said boats from every manner or kind of damage or injury whatsoever, or from loss or destruction of the same. And it is hereby further agreed by the said parties of the second part to take the said boats and run them by day and by night from the opening of the navigation on the Schuylkill canal to the close of the same the present season, from Philadelphia to Port Clinton, the termination of the Little Schuylkill Rail Road, and to perform at least five trips per month, and if practicable six trips; and inasmuch as it is absolutely necessary for the safety of the boats at night to have good and efficient lights to protect them from injury, the said parties of the second part, hereby agree to furnish each boat with two brilliant lights in a prominent and conspicuous place on the bow which are to be always lighted at night: and further to have an ample number of depots of fresh horses on the line of the canal to enable them to carry this agreement fully and actively into effect; and moreover, for which purpose to furnish at all times a sufficient number of the best captains and hands to carry on the business with care,

[Blattenberger v. The Little Schuylkill Navigation, &c. Company et al.]

economy and despatch, and in the event of the misbehaviour, negligence, inattention or incapacity of any man employed, he is to be forthwith removed, on notice being given or at the request of the party of the first part.   And as it is important that the boats should perform their trips with great regularity and in succession, it is hereby understood, that in the event of any captain arriving out of order, or after the preceding boat, his boat will be liable to be forthwith placed in the hands of another captain, on the party of the first part giving notice thereof.   Immediately on the arrival of the boats at Port Clinton, they are to proceed to the chutes to take in their cargoes with as little delay as possible, and are forthwith to return to the city immediately on the hands having taken in their load.   And as it is the intent and meaning of this agreement, that no time should be lost either at Philadelphia in discharging, or by delay at any place, the said parties all hereby mutually agree one with the other, to spare no pains to prosecute the business with as little delay as possible, and with that view to have the landings and every thing else so arranged as to save time.   For and in consideration of the foregoing, the said Thomas Biddle hereby agrees to furnish on the landings at Port Clinton, a constant supply of coal for said boats, and to pay the sum of eighty-five cents for each and every ton as ascertained at the weigh-locks at Kernsville or Fairmount, on its delivery at such wharf on the Schuylkill at Philadelphia, as may be designated on the bills of lading furnished each captain, hereby reserving ten cents per ton for the faithful and punctual compliance with the foregoing premises, which is to be paid up in full on the close of the navigation in December next, in the event of all the coal having been faithfully delivered in accordance to this agreement.   And it is hereby further understood and agreed by the said parties of the second part, that they are to deliver up at the close of the navigation, in good order and well conditioned, the unavoidable wear and tear only excepted, which shall be ascertained by the boat-builder employed by Thomas Biddle or any other suitable person appointed by him, and to be delivered at such place as he may designate, all the boats received under this agreement; and the said parties of the second part hereby jointly and severally bind themselves in the penal sum of one thousand dollars so to do, and sooner if required.

"It is hereby further understood, that five trips are to be per-

[Blattenberger v. The Little Schuylkill Navigation, &c. Company et al.]

formed per month, if it is possible to be accomplished by horse power night and day, and not otherwise.

Thomas Biddle, by his attorney

Witnesses, E. R. BIDDLE,

Samuel Bradford, }
Thomas Wright, } WM. ALEXANDER,
Jacob Snider, Jr. { FRED. KOONS,
ALEX'R. SCOTT.

" It is also hereby further agreed and understood, that the tolls up and down are to be paid by the said party of the first part, Thomas Biddle : and the boats are to be loaded and unloaded by and at the expense of the said parties of the second part, William Alexander, Frederick Koons, and Alexander Scott.

" Philadelphia, February 27th, 1832.

Tho's. Biddle, by E. R. BIDDLE, Att'y.
WM. ALEXANDER,
ALEX'R. SCOTT."

The following receipts were also in evidence :

" Philada., February 27th, 1832. Received five hundred dollars in advance, to be deducted out of the first earnings, or to be returned on demand. WM. ALEXANDER.
ALEX'R. SCOTT."

" Philada., April 3d, 1832. Received of E. R. Biddle, per the hands of Sam'l B. Parsons, one hundred dollars, to be deducted out of the first earnings of the boats, or to be returned on demand.
WM. ALEXANDER & Co."

" Philada., April 5th, 1832. Received four hundred dollars on account, to be deducted out of earnings of boats, or returned on demand. WM. ALEXANDER."

" Received in good order and well conditioned, under this contract, the following boats :

Masters.

| | | | |
|---|---|---|---|
| Victory, | built by J. Carter, | Herman Sutton, | |
| Pennsylvania, | " Easby, | Jesse Burk, | April 3d, |
| Mahanoy | " Crawford, | Peter Miller, | 1832. |
| Ohio, | " J. Carter, | John Smith, | |

WM. ALEXANDER & Co."

[Blattenberger v. The Little Schuylkill Navigation, &c. Company et al.]

"$250.    Philada., April 28th, 1832.    Received two hundred and fifty dollars on account.

WM. ALEXANDER."

"$35.    Received, May 4, 1832, thirty-five dollars for freight.
WM. ALEXANDER."

"$100.    Received, May 11, 1832, one hundred dollars."

"$50.    Received,    " 19, 1832, fifty dollars."

"$120.    Received,    " 19, 1832, one hundred and twenty dollars."

"$125.    Received, June 6, 1832, one hundred and twenty-five dollars."

*Meredith*, for plaintiff.
*Williams*, for defendants.

STROUD, J.—By the agreement of February 21, 1832, the *corporation* defendant parted not only with the possession, but with all right to the actual control of the ten boats, both the possession and right of control having by that instrument been vested in the other defendants, in conjunction with Alexander Scott, who does not appear to have been served process.    This is the plain intent and legal effect not only of particular significant expressions, but results from the entire frame of the contract.    This transfer was to continue until the close of the canal navigation in that year, unless the corporation, in virtue of a reservation expressly made, should, by a requisition for that purpose, terminate it sooner.    It is not pretended that any such requisition was made, and at the time of the collision of the boats which produced the injury complained of, the boat which is alleged to have caused the injury, was, according to the agreement, in the possession and under the control of *Alexander and Koons*, and *out* of the possession, and *not* under the control of the *corporation*.

The case then appears to be this: The corporation owned boats and a quantity of coal which it was judged expedient to have transported from Port Clinton to Philadelphia.    The other defendants possessed the *motive power* necessary to navigate these boats.    They agreed with the corporation to apply this *motive*

[Blattenberger v. The Little Schuylkill Navigation, &c. Company et al.]

*power—horses and hands—*to propel the boats of the corporation, which were for that purpose delivered to them, in conveying the coal on the canal. The corporation had no charge or expense either in the loading, conveying, or unloading the boats.

In its essential facts, I am not able to distinguish the present from the class of cases which have been repeatedly the subject of adjudication, where the owner of a carriage hires a job coachman to furnish him with horses and a driver to take him a particular journey, and in the course of it the carriage, by the carelessness or unskilfulness of the driver, is brought into collision with another carriage and injures it. Laugher v. Pointer, 5 *B. & C.* 547, (12 *E. C. L. R.* 311;) Smith v. Lawrence, 2 *Man. & Ry.* 1, (17 *E. C. L. R.* 289;) Samwell v. Wright, 5 *Esp. R.* 129; and *Sir Henry Houghton's* case, (as quoted by *Lord Chief Justice Abbott,* in Laugher v. Pointer,) all determined that in a case so circumstanced, the owner of the horses and employer of the driver, and *not* the owner of the carriage, is the person responsible for the damages. And in Dean v. Branthwaite, 5 *Esp. R.* 35, Lord Ellenborough stated the law to be in the same way.

In Laugher v. Pointer, the Judges of the King's Bench were equally divided, but the same judges all concurred in Smith v. Lawrence, which the dissenting judges in the former case thought distinguishable in a slight particular from the latter, whilst those whose opinion prevailed in the former case, considered the two essentially similar. In the *principle of law* applicable to the subject, there was a perfect agreement among them on both occasions. And that principle is this: *that the person having the possession and actual control of that which occasions the injury is alone responsible for the injury.*

Now the case at bar differs from those just referred to, in but a single circumstance, and this difference works altogether in favour of the *corporation.* In the English cases, the owner of the carriage was *riding in it* at the time of the accident, and on this account, the *dissenting* judges, in Laugher v. Pointer, thought he should be deemed, in point of law, to have had the control *of the driver,* and that the relation of master and servant was thus established between them. In this case, it is not pretended that the corporation by any special agent was in the boat, or exercised any kind of agency in guiding and controlling it.

The argument on the other side is, that as the coal was the

property of the corporation, and was for its profit brought to market, *the act of transportation* was *its business*, and the other defendants mere instruments of its will in the arrangement which existed. This argument it appears to me, would have applied with much more force to the state of facts involved in the English decisions; for the owners of the carriages there had in view their own personal pleasure, convenience or profit, and nothing else. But this argument is altogether fallacious. It would be just as proper to say that those who furnished the horses and drivers were engaged *in their own business.* The same thing may in point of fact, be said of each party, and plainly therefore does not reach the difficulty encountered. Indeed, with the very same propriety might this argument be used, if the corporation had not been even the owner of the boats, but merely of the coal, and *Alexander and Koons* had undertaken to furnish *boats, horses,* and *men;* fixing, as in the agreement before us, the number of boats to be furnished, and the number of trips to be performed, &c.

There is a class of cases, some of which were cited on the argument, which I do not think it necessary to notice, except to show their want of application. They relate to *real* estate,—the owners of which have been held liable for injuries arising from the fault of workmen not employed directly by the owners of the estate, but by contractors, who had undertaken to perform certain things for the owners. Littledale *v.* Lonsdale, 2 *H. Bl.* 267, 299; Bush *v.* Steinman, 1 *B. & P.* 404; Stone *v.* Cartwright, 6 *Durn and East.* 411; Matthews *v.* West London Water Works, 3 *Camp.* 403; Stone *v.* Codman, 15 *Picker. R.* 297, are of this description.

Whether, which seems probable and is so intimated by Abbott C. J., and Littledale J., in Laugher *v.* Pointer, a distinction exists between the liability of the proprietors of lands and chattels, it is unimportant, on this occasion to consider. For in respect to the proprietors of land, if *out* of actual possession, no such liability would be sustained. This is apparent from Leslie *v.* Pounds, 4 *Taunt.* 649, where it is assumed that after a demise of the property by the owner, he would not be answerable for injuries arising from culpable neglect of workmen about the property, unless he had assumed the actual personal superintendence of the workmen.

I am of opinion, therefore, that the verdict so far as it affects

[Blattenberger v. The Little Schuylkill Navigation, &c. Company et al.]

the *corporation* is erroneous, and unless it can be modified by consent of *all* parties, to apply to *Alexander and Koons* only, should be set aside.

PETTIT, *President,* concurred.

JONES, J.—In order to determine the question reserved upon the trial of this cause, it is necessary to consider the legal effect of the agreement between Thomas Biddle of the one part and Wm. Alexander, Frederick Koons, and Alexander Scott on the other part, dated the 21st February, 1832.   (See paper book.)

It is admitted that Mr. Biddle, in making this agreement, acted on behalf of the Little Schuylkill Navigation, Rail Road, and Coal Company, with full authority.

The contract in question is to be regarded either as a demise of the boats by the company to Alexander and others, with a superadded contract by the latter, to transport coal for the company.   Or it is to be regarded as a contract by the company with these persons for labour to be performed by them with the company's boats.

If the contract contains in legal effect a demise of the boats to Alexander and the others, it would follow that the company parted with the possession of the boats during the time or term specified, which they could not lawfully resume, against the will of their lessees, and had a stranger tortiously obtained the possession of them, the company could not have maintained either trover or trespass, against the wrong-doer during the term.   Another consequence would be this.   If the lessees of the boats had departed their service, and gone into the employment of any other person, the company would have no remedy except upon the breach of the contract; they could not have detained the boats at their own wharves, nor could they have lawfully gained the possession during the term by a writ of replevin.

On the other hand if the substance of this contract be an agreement for work and labour to be performed by Alexander and the others, for the company, with their boats, it would follow that the company had still the possession of their boats in point of law— they might have put them into other hands, or put other boats into the hands of Alexander, &c., in lieu of the boats first committed to their custody, and in case of a tortious taking of them by third

[Blattenberger v. The Little Schuylkill Navigation, &c. Company et al.]

persons, or of the misemployment of them by Alexander &c., the company would have immediate remedy by action founded upon their possession or right of immediate possession.

The difference therefore, in the views taken of this contract are important, and the expressions of it must be very ambiguous or incongruous, if they tend with equal force to either result.

My opinion is, that the contract is of the latter description. The chief object of the company appears to have been to obtain labour or service to be performed for them in conveying their own coal in their own boats, under such terms as should secure the transportation of as much as possible, by means of a given number of boats.

The object of Alexander, Koons and Scott, appears to have been to obtain employment upon such terms as would yield them the largest remuneration possible for their labour in carrying coal at a given price per ton.

The object of the company was not to part with the possession of their boats, nor was it the object of Alexander, &c. to acquire the possession of them, because the agreement is that they shall be employed in the service of the company in the manner specified, and it is inconsistent with the nature of a demise that the use of the chattel should be thus specially controlled. Besides, the words appropriate to create a demise are not used in the instrument. Mr. Biddle agrees *to deliver* the boats in good order, to Alexander, &c., but the meaning of the parties by this clause is explained by the correlative stipulation of the party of the second part, viz.: to *take charge* of the said boats—and *to take the said boats and run them.* It has been suggested that the stipulation to deliver up the boats at the close of the navigation in good order, &c. shows that the effect of the previous part of the agreement, is that of a demise. But this clause is subordinate to that part of the instrument and cannot enlarge its effect. The boats, by the terms of the instrument, were to be put into the hands of the party of the second part, for the purposes contemplated, and the party of the second part were to have the charge of them, and to run them, and this charge or custody was to be delivered up. It was a proper provision to insert, and would have been so, if the parties had expressly declared the intent of the instrument not to create a demise of the chattels, or otherwise to part with the possession of the boats, or suspend their right to control them.

27*

There are other clauses in the agreement, the intention of which is obviously to secure the company against risks of injury to their boats, by negligence, accident, mismanagement, or malconduct.

The service contracted for was of a nature not to admit, (at least not conveniently,) of a constant supervision. The company had committed their property to the custody of these persons, under circumstances and for a purpose incurring necessarily great expense, and without the power to determine whether any injury which might occur, was attributable properly to accident or to negligence, and it was proper enough, if the parties could so agree, to put all injuries arising from any cause upon the same footing. But without this clause, Alexander, Koons and Scott would have been responsible to the company, for injuries done to the boats by their negligence or misconduct, and the mere fact that the clause was inserted in the instrument would not change the nature of a contract for service into a contract of a different nature.

In fact all these provisions which have respect to the security of the boats are not repugnant to the relation of master and servant. In an indenture of apprenticeship at a mechanical employment, a clause may (without any repugnancy,) be inserted, binding the apprentice (if he be *sui juris*) or his parent or guardian, to make good any injury which might occur to the tools or implements with which the apprentice should be entrusted, while they were in his hands.

Nor does the fact that Alexander, Koons and Scott, were to be paid for their labour at so much for each ton delivered, make any difference. The clause applies to the mode or measure of compensation merely, and is not at all inconsistent with the relation of master and servant.

The same remark may be made upon these clauses which contemplate the employment of other persons by Alexander, Koons and Scott, to act with them, or under them. For not to insist upon the fact that the nature of the service required the agency of more than these three persons, and admitting, for the sake of argument, that the company would not have been liable if the contract had been for the management of the whole business without the right of interference on the part of the company, the company do in fact retain by express words, the power to have

[Blattenberger v. The Little Schuylkill Navigation, &c. Company et al.]

any of the subordinates forthwith removed, on notice given, or request made by them to Alexander, Koons or Scott, either for misbehaviour, negligence, inattention or incapacity, neither of which causes would be a matter of any moment in an ordinary contract for mere transportation, when the party contracting for it, intends to get rid of the trouble of personal management and care altogether, and is willing to rely upon his action for a breach of contract, in case of the non-delivery of the article, according to the terms of the contract.

But it is supposed that as Alexander, Koons and Scott, were to provide the motive power of the boats, the company cannot be made liable to third persons for injuries resulting from their negligence.

There is nothing in the instrument to prevent us from saying that Alexander, Koons and Scott acted as the agents of the company, in procuring that power. If Alexander, &c. were already the owners of a sufficient number of horses for the purposes contemplated, it was a contract with them for services to be performed by them and their horses. The price allowed per ton, was intended to cover this expense, and in case of hiring from third persons, the money paid may be considered as advanced to them in part, for the purpose of complying with such contract. And in case of the misapplication of the money by them, although they would be liable on the contract for hiring, unless they contracted expressly as the agents of the company, yet it would by no means follow that the subordinate hands employed, as well as those who furnished to Alexander, &c. the motive power, would not have a right to look to the company for payment. I am not prepared to say, that the captains employed to manage the boats, as well as every other person co-operating under a contract in carrying on the business, would have a remedy by action against the company, for their work, labour, and services done or rendered. But the scope of the contract has respect to a service to be done for the company. The coal is theirs, the boats are theirs; they direct that they shall be constantly and carefully run; they require relays of fresh horses; they retain a control over the captains and hands; they require that the boats shall proceed in a regular succession, and that no time shall be lost in discharging or taking their loads, or by delays at any other place.

In ordinary contracts for service, directions of this nature are

[Blattenberger v. The Little Schuylkill Navigation, &c. Company et al.]

left to be given as occasions require. In contracts for service generally, and not in a particular employment, these matters are not considered beforehand. In contracts for service in a particular employment, it is convenient and usual to have particular directions for emergencies. But in a contract for such a service as this, it is possible to specify, and it may be convenient and safe for the employer to do so, inasmuch as his object is to avoid the care of constant supervision. Indeed, such supervision would be impossible without creating another set of agents, who, themselves might need to be bound by contract to the performance of their particular duties. But the insertion of these particulars as terms of contract in the instrument, does not alter the relation of the contracting parties, because they are matters of direction, appropriate to the relation of master and servant, and therefore not at all repugnant to the principal intention of the parties.

On the other hand, these provisions are repugnant to the idea of a demise of the boats. To specify but one of them. It is not the interest of the lessor of a chattel like this, that it should be used as much as possible, under circumstances of constant exposure to injury. And if such had been a principal intention of the parties, it is impossible to conceive the intention of the company for inserting the requisition, that the boats should be run constantly day and night, or of Alexander, &c. that they should agree to take the boats and run them day and night. But considered in the other point of view, the object of the company is obviously to accomplish the maximum of useful effect with the least expenditure of capital in boats, and a sufficient motive for the other party to comply with these terms, is found in the increase of compensation for their extraordinary diligence in performing the service.

The view which has been taken of the contract, is decidedly for the interest of the company, if they are still employed in the transportation of coal under such contracts as this, and they may stipulate to retain of the earning of persons so employed by them, a sufficient sum to indemnify them for damages which they may be obliged to pay for such injuries. At least they may do so, except in cases of extraordinary injury. But if the law were as it must be contended for, in order to be available to their protection under the circumstances of this case, their boats might be employed by irresponsible persons, in the service of any one who

[Blattenberger v. The Little Schuylkill Navigation, &c. Company et al.]

would offer more advantageous terms. But certainly if it be the object of the company to employ persons to run their own boats in conveying their own coal to market, whom they are not willing to look to for indemnity against injuries, resulting from the negligent performance of the service, they must incur the risk of putting their boats out of their own possession, and beyond their immediate control, and be content to rely on such stipulations as are consistent with a contract, merely for transportation. They cannot retain a general power to control the manner in which the undertaking shall be performed, as well as the possession in law of their boats, and avoid the liability of a master for the negligence of his servant, by inserting in the instrument as terms of contract, matters of direction, which are appropriate only to that relation.

I am of opinion judgment should be entered on the verdict.

New trial ordered.